**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DEREK WHOLIHAN,** | : | |
| | : | **Case No. 2:24-cv-3813** |
| **Plaintiff,** | : | |
| | : | **Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **CITY OF COLUMBUS,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter comes before this Court on Defendant City of Columbus's Motion for Summary Judgment. (ECF No. 24). For the following reasons, that Motion is **GRANTED**.

## I. BACKGROUND

In February 2018, the City of Columbus hired Derek Wholihan to be a community relations representative for the Department of Public Service's "Keep Columbus Beautiful" program. In this role, Wholihan taught organizations about trash management and recycling, attended community events, tracked data for the program, and reported community cleanups. He primarily worked out of a warehouse in Columbus. (*See* ECF Nos. 24 at 2–3; 32 at 3–4). Aryeh Alex became Wholihan's supervisor in September 2021; for some time prior to that point, Wholihan had been diagnosed with anxiety and depression. (ECF Nos. 24 at 3; 32 at 5).

In 2022 and 2023, Wholihan had performance issues. For instance, Keep Columbus Beautiful oversaw a school litter cleanup program, which allowed children to participate in litter cleanups and receive funding. The Boys and Girls Club of Central Ohio was selected in 2022 to oversee the school litter cleanup program and Wholihan was responsible for facilitating this by

keeping track of organizations participating in cleanups. On December 29, 2022, Alex emailed Wholihan and the Boys and Girls Club to notify them that the cleanup program had ended and that participants should be paid. The Boys and Girls Club reached out to Wholihan regarding a cancelled check for one of the cleanup girls, but Wholihan failed to notify Alex about the issue at the time. Days later, a cleanup group emailed Wholihan, who forwarded the message to Alex. Alex requested additional information, and Wholihan informed him that the Boys and Girls Club had already started returning funds to the City, preventing the cleaning groups from getting paid. Wholihan was then interviewed for an internal investigation, which uncovered that he had lacked oversight of the school cleanup program, resulting in at least three youth groups not receiving payment for work totaling more than $15,000. Wholihan was charged with violating work rules, attended a disciplinary hearing, and pleaded guilty to neglect of duty and insubordination, receiving a three-day working suspension, effective March 29, 2023. (ECF No. 24 at 3–5; Wholihan Dep. Ex. E, ECF No. 22-4).

Additionally, Wholihan's performance was wanting on other tasks. In February 2023, he was charged with insubordination and neglect for failing to audit City buildings to determine if they had recycling dumpsters. In March 2023, he mishandled a mulch delivery. In April 2023, he caused the Keep Columbus Beautiful website to prevent volunteers from requesting supplies or reporting numbers. (ECF No. 24 at 5). In a self-appraisal for his work performance in 2022, completed in February 2023, Wholihan marked his "Quality of Work" and "Initiative" as "Development Needed," explaining:

> Over the past year I have struggled with the quality of my work. Oftentimes, I feel exhausted and burned out and I let this affect my work performance. After taking on additional duties, such as tracking diversion, I often became confused by the information I had to track down. I let the School Cleanup Program stress me out to the point where there were days I ignored it and did a mindless project. This led me to missing things I should not have missed. I let my surroundings affect me in

> a negative manner. I know that I am capable of so much more and just need to keep remembering that.
>
> * * *
>
> I have often felt that I have been the only one in the KCB office/warehouse that operates with any sense of urgency. This thinking led me to a place where I had less initiative to perform my job in a timely and well manner. I did not go above and beyond as I usually would.

(Wholihan Dep. Ex. D, ECF No. 22-3).

Wholihan's supervisor Alex completed a performance appraisal for him in April 2023 and rated his quality of work as "Unacceptable," noting:

> The quality of Derek's work was unacceptable this past year. Most of projects he was assigned required significant checking from management, lacked critical details, were not complete, and caused major problems resulting in problems that harmed the reputation of KCB and City of Columbus and our partners. Derek failed to plan ahead, organize his work, and make logical decisions—all items that caused problems throughout the year.

(Alex Dep. Ex. L, ECF No. 21-1).

Accordingly, Wholihan was placed on a performance improvement plan ("PIP") from April 17 through June 16, 2023. (Wholihan Dep. Ex. G, ECF No. 22-6).

On June 23, 2023, Wholihan was informed that he failed his PIP and would be referred for discipline. That same day, he emailed City of Columbus employees Aryeh Alex, Lori Wellman, Timothy Swauger, and Julie Gillilan to provide them his two weeks' notice that his last day would be July 7, 2023:

> The reason for this notice is because I refuse to work for an organization that does not value their employees. I feel that I have been continually bullied, set up, lied about, and my mental health has greatly suffered as a result. Even after bringing up my mental health issues, which were directly caused by my treatment at work, I was told to 'figure it out and step it up.' That response was vile, dismissive of my struggles, and proved that I do not matter. Mayor Ginther said the following on August 9th, 2022. "Mental Health is exceptionally important. I think we need to talk more about mental health and taking away the stigma that is associated with it." It is a shame that an organization under his purview blatantly does not care, and for that, I will no longer accept it.

(Wholihan Dep. Ex. J., ECF No. 22-8). Wholihan subsequently informed Alex, Wellman, and Gillilan on June 30, 2023 that he would leave immediately. (Wholihan Dep. Ex. K., ECF No. 22-9).

Wholihan initiated this lawsuit in August 2024, asserting disability discrimination against the City of Columbus under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Ohio law, *see* Ohio Rev. Code § 4112.02. (ECF No. 1 ¶¶ 23–40). In January 2026, the City moved for summary judgment on all claims, seeking dismissal and costs. (ECF No. 24 at 15). Wholihan opposed, (ECF No. 32), and the City replied. (ECF No. 33). This matter is ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's function is not "to weigh evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Courts ask whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment is inappropriate "if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In such a case, there is an issue for trial because "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," but evidence that is "merely colorable" or "not significantly probative" is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment carries the initial burden of presenting law and argument in support of its motion, as well as identifying the relevant portions of "'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). "If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial." *Hines v. Humana Ins. Co.*, 689 F. Supp. 3d 516, 525 (S.D. Ohio 2023) (Marbley, J.) (citing Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250).

Factual evidence is viewed "in the light most favorable to the non-moving party," and "all reasonable inferences" are drawn in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). A mere "scintilla" of evidence supporting the nonmoving party's position is insufficient—"there must be evidence on which the jury could reasonably find for the [nonmovant]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

## III. LAW & ANALYSIS

Wholihan asserts two counts against the City of Columbus, each under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Ohio law, *see* Ohio Rev. Code § 4112.02: (1) disability discrimination; and (2) discrimination for regarding Wholihan as disabled. (ECF No. 1 ¶¶ 23–40).

### A. Disability Discrimination

To recover on a claim for disability discrimination under the Americans with Disabilities Act or Ohio law,[1] Wholihan must show that: (1) he is disabled; (2) otherwise qualified to perform

[1] The parties rely on federal law in their briefing, and this Court's analysis focuses on federal law, given Ohio courts look to federal regulations and case law interpreting the ADA when applying analogous Ohio law. *E.g.*, *Cox v. True N. Energy, LLC*, 524 F. Supp. 2d 927, 943 (N.D. Ohio 2007) ("When a disability discrimination plaintiff makes claims under both the federal ADA and Ohio disability law found in § 4112, the case law instructs that both claims are generally subject to the same legal analysis applicable to federal ADA claims."); *Witte v. Rippe & Kingston Sys., Inc.*, 358

the essential functions of the position, with or without accommodation; and (3) suffered an adverse employment action because of his disability. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). The "because of" requirement means that the discrimination laws "prohibit discrimination that is a 'but-for cause of the employer's adverse decision.'" *Lewis v. Humboldt Acquisition Corp.*, 681 F.2d 312, 321 (6th Cir. 2012) (en banc) (Sutton, J.) (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009)). Wholihan can make this showing by introducing direct evidence of discrimination, "including evidence that the employer relied upon [his] disability in making its employment decision, or by introducing indirect evidence of discrimination." *Ferrari*, 826 F.3d at 891 (citation and internal quotation marks omitted).

***Direct Evidence Test.*** The direct evidence test "mirrors the requirements" of a disability claim. *Ferrari*, 826 F.3d at 891. That is to say, as a threshold matter, there must be "direct evidence that the plaintiff suffered an adverse employment action because of his or her disability," and then the plaintiff "bears the burden of establishing that he or she is 'disabled' and 'otherwise qualified for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation.'" *Ferrari*, 826 F.3d at 891.

***Indirect Evidence Test.*** The indirect evidence test "adapts" the *McDonnell Douglas* burden-shifting framework; to establish a claim for disability discrimination under this method, "a plaintiff must first establish a *prima facie* case of discrimination by showing" that: (1) he or she is disabled; he or she is otherwise qualified for the position, with or without reasonable accommodation; (3) he or she suffered an adverse employment decision; (4) the employer knew

F. Supp. 2d 658, 661 n.1 (S.D. Ohio 2005) (Marbley, J.) (applying federal jurisprudence to analyze disability claims arising under both Ohio and federal law).

or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Ferrari*, 826 F.3d at 891–92; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to offer a legitimate explanation for its action." *Ferrari*, 826 F.3d at 892 (citation and internal quotation marks omitted). If the defendant does so, the burden shifts back to the plaintiff to introduce evidence showing that the proffered explanation is pretextual. *Id.*

Wholihan argues that he can satisfy either the direct or indirect evidence tests. (ECF No. 32 at 10–11).

### B. Adverse Employment Action Because of Disability

The City of Columbus contends that Wholihan cannot show that he suffered an adverse employment action because of his disability, and thus, he cannot establish a *prima facie* case of disability. (ECF No. 24 at 8–9). The City takes the position that Wholihan's PIP was not a disciplinary action and there is no record evidence that he was ever subject to a disciplinary action because of his disability. (ECF No. 24 at 10–13).

Wholihan counters that he has established that he "presented a reasonable accommodation for his daily duties in person and via email to his supervisor Alex," and "informed Gillilan of his disability [and] presented the plan of accommodation to Gillilan," yet neither responded. (ECF No. 32 at 11). This, he argues, is direct evidence of disability discrimination. (*Id.*). He also argues that "he became subject to endless disciplinary actions until he was informed his termination was initiated following his alleged failure to complete his PIP." (*Id.*).

The problem for Wholihan is that the email sent to Alex, as the City points out, is "the only documentary evidence that purportedly constitutes a request for accommodation," yet it "makes

no mention of any alleged disability." (ECF No. 24 at 11). Indeed, the email simply includes a proposal for Tia Battle and Wholihan to "define [their] roles for KCB's day-to-day operations." (Wholihan Dep. Ex. F, ECF No. 22-5). Nowhere does it discuss any purported disability or accommodation of Wholihan's. In fact, it was not even drafted by Wholihan; instead, it was drafted by his colleague.

Aside from this email, which decidedly does not provide the facts Wholihan claims, Wholihan offers no record evidence to show that he notified the City of Columbus of his disability or requested an accommodation. In fact, the vast majority of his argument rests on his own deposition testimony. Aside from his own testimony, he only offers the testimony of two other witnesses in support of his position that the City of Columbus knew about his disability. (*See* ECF No. 32 at 6 n. 28, 30). He overreads the import of the testimony of these witnesses, however, and his argument is not convincing.

First, Wholihan offers the testimony of Battle. Battle's testimony merely established that another City employee, Swauger, had mentioned to Wholihan's colleague that Wholihan "was a sensitive individual and he was aware of Mr. Wholihan using the City's [employee assistance] services for individuals," which Battle characterized as being "like, employee assistance . . . it was for like mental health services." (Battle Dep., ECF No. 29-1 at 83–84). Second, Wholihan offers the testimony of Julie Gillilan, Alex's supervisor. Gillilan testified that in June 2023, Wholihan informed her he was struggling because he "was not enjoying the job," and had "recently started" taking "anxiety meds." (Gillilan Dep., ECF No. 31-1 at 12–14). Wholihan attempts to stretch their testimony into confirmation that the City was aware of his alleged mental health issues. That goes too far.

Wholihan relies almost entirely on his own deposition testimony. The City challenges the reliability and weight due to these statements, characterizing them as "self-serving testimony . . . insufficient to overcome a motion for summary judgment." (ECF No. 24 at 11) (quoting *Britenriker v. Mock*, 2009 WL 2392917, at *5 n.1 (N.D. Ohio July 31, 2009)). It is true that "sometimes evidence of that nature might not be sufficient to survive summary judgment," as it "may not create a *genuine* issue of material fact." *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020). This Court need not determine whether it should apply such an extreme rule to Wholihan's testimony here, because Wholihan has failed to address this argument in his opposition brief, and thus waives his opposition on this point and effectively concedes it. *Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*, 2021 WL 1964478, at *11 (S.D. Ohio May 17, 2021) (Marbley, J.).

Beyond Wholihan's own testimony, the testimony of Battle and Gillilan is the only evidence he provides to suggest that the City knew about his disability. First, this evidence hardly seems to show that the City knew Wholihan was disabled. The City offers evidence showing that Wholihan's resignation email was the first time he raised mental health issues with Alex (his supervisor) or Lori Wellman (the department human resources officer). (*See* ECF No. 24 at 7; Alex Dep., ECF No. 21-1 at 43–44; Wellman Dep., ECF No. 23-1 at 32–33). And the City offers evidence showing that Wholihan had never requested an accommodation prior to his resignation email. (ECF No. 24 at 7; Wellman Dep., ECF No. 23-1 at 48; Wellman Aff. ¶ 6, ECF No. 24-1; Alex Aff. ¶ 4, ECF No. 24-2).

The City points out that there is no documentary evidence supporting Wholihan's claim of meetings at which he discussed his disability, or his need for any accommodation related to any disability. Rather, the documentary evidence suggests that those meetings related to other topics.

(ECF No. 24 at 7–8). In sum, the City argues that it had no knowledge of any disability during the time Wholihan was employed, and Wholihan never requested an accommodation. (*Id.* at 8).

Although the record evidence casts serious doubt on whether the City knew that Wholihan had a disability, it ultimately does not matter. Even if the City knew about Wholihan's purported disability, Wholihan did not suffer an adverse employment action because of a disability. It is undisputed that Wholihan *resigned* from City employment. (Wholihan Dep., ECF No. 22-1 at 115, 117). Without an adverse employment action, Wholihan cannot recover for disability discrimination. *See Ferrari v*, 826 F.3d at 891–92. Wholihan's argument that he "had no other choice but to resign before he was fired" is speculative and unfounded on any record evidence aside from his own testimony. (ECF No. 32 at 8).

Negative performance evaluations "do[] not constitute . . . adverse employment action, unless the evaluation has an adverse impact on an employee's wages or salary." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007) (Marbley, J., by designation). Aside from termination or negative impacts on wages or salary, other adverse employment actions include a "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (citation omitted). Nor does a "PIP . . . represent a significant change in Plaintiff's employment, and accordingly cannot be considered an adverse employment action giving rise to [a] [disability] discrimination claim." *Harrison v. Procter & Gamble Distrib., LLC*, 290 F. Supp. 3d 723, 736 (S.D. Ohio 2017) (Black, J.); *accord Bacon v. Honda of Am. Mfg., Inc.*, 192 F. App'x 337, 343 (6th Cir. 2006).

In sum, there is no genuine issue of material fact that Wholihan resigned of his own volition, and there is no genuine issue of material fact as to whether he suffered an adverse

employment action. He did not. Thus, he cannot maintain this disability discrimination action. This Court need not reach the City's alternative arguments that presume Wholihan has established a *prima facie* case of discrimination.

## IV. CONCLUSION

For the foregoing reasons, the City of Columbus's Motion for Summary Judgment (ECF No. 24) is **GRANTED**. The Clerk of Court is **DIRECTED** to close this case.

To the extent that the City of Columbus requests costs assessed to Plaintiff, it does not provide a basis for that request, and that request is **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 30, 2026**